**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| SIERRA CLUB<br><br>                Plaintiff,<br><br>v.<br><br>RICK PERRY, Secretary,<br>U.S. Department of Energy,<br><br>                Defendant. | No. 17-cv-2700 (EGS) |

<u>**MEMORANDUM OPINION**</u>

In this action the plaintiff, Sierra Club, asks the Court
to declare unlawful the failure of Defendant Rick Perry, in his
official capacity as the Secretary of the United States
Department of Energy (the "Secretary"), to promulgate final
regulations establishing standards for energy efficiency in
manufactured housing pursuant to the Energy Independence and
Security Act of 2007 ("EISA"), 42 U.S.C. § 17071(a)(1), and
pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C.
§ 706(1). In the EISA, Congress mandated that these standards
"shall" be established by the Secretary "[n]ot later than 4
years after December 19, 2007[.]" 42 U.S.C. § 17071(a)(1). The
Secretary does not deny that he was required by statute to
publish final regulations on or before December 19, 2011.
Rather, the Secretary contends that Sierra Club lacks standing
to bring this lawsuit.

Pending before the Court is the Secretary's motion to dismiss the amended complaint. Upon careful consideration of the Secretary's motion, the opposition, and the reply thereto, the applicable law, and the entire record, the Secretary's motion to dismiss is **DENIED**. For the reasons stated below, the Court finds that Plaintiff Sierra Club has standing to sue on behalf of its members.

## I.  Background

Roughly six percent of all homes in the United States are manufactured homes.[1] Energy Conservation Standards for Manufactured Housing, 81 Fed. Reg. 39756, 39762 (June 17, 2016). Manufactured housing is an accessible and affordable housing option, but owners and residents of manufactured homes have higher utility bills than those living in traditional "site-built and modular homes in part due to different criteria for energy conservation and variability among building codes and industry practice." *Id.*

---

[1] Congress has defined a "manufactured home" as:
    [A] structure, transportable in one or more sections, which, in the traveling mode, is eight body feet or more in width or forty body feet or more in length, or, when erected on site, is three hundred twenty or more square feet, and which is built on a permanent chassis and designed to be used as a dwelling with or without a permanent foundation when connected to the required utilities, and includes the plumbing, heating, air-conditioning, and electrical systems contained therein[.]
42 U.S.C. § 5402(6).

## A. Energy Independence and Security Act

In 2007, Congress enacted the EISA to, among other things, "increase the efficiency of products, buildings, and vehicles," with an energy code improvements provision for manufactured homes. Pub. L. 110-140, 121 Stat 1492 (Dec. 19, 2007) (codified at 42 U.S.C. § 17071(a)(1)). Section 17071(a)(1) provides: "Not later than 4 years after December 19, 2007, the Secretary shall by regulation establish standards for energy efficiency in manufactured housing." 42 U.S.C. § 17071(a)(1). The Secretary must establish these standards "after . . . notice and an opportunity for comment by manufacturers of manufactured housing and other interested parties" and "consultation with the Secretary of Housing and Urban Development, who may seek further counsel from the Manufactured Housing Consensus Committee." *Id.* § 17071(a)(2). Further, the statute requires:

> The energy conservation standards established under this section shall be based on the most recent version of the International Energy Conservation Code ["IECC"] (including supplements), except in cases in which the Secretary finds that the code is not cost-effective, or a more stringent standard would be more cost-effective, based on the impact of the code on the purchase price of manufactured housing and on total life-cycle construction and operating costs.

*Id.* § 17071(b)(1) (footnote omitted). Finally, the IECC is revised "every three years." *Building Energy Codes 101: An Introduction*, 10, U.S. Dep't of Energy (May 2010) ("The IECC

applies to both residential and commercial buildings."),

https://www.energycodes.gov/sites/default/files/becu/BECU_Codes_101.pdf.

More than nine years ago, the United States Department of Energy ("DOE") took steps to fulfill its obligations under the EISA by attempting to promulgate the required regulations. *See, e.g.*, Am. Compl., ECF No. 14 ¶ 15; Energy Efficiency Standards for Manufactured Housing, 75 Fed. Reg. 7556-01, 7556 (Fed. 22, 2010); 81 Fed. Reg. at 39756. In February 2010 and June 2016, DOE published two different advanced notices of proposed rulemaking and requested public comments. *See* 75 Fed. Reg. at 7556; *see also* 81 Fed. Reg. at 39756. After receiving and considering the comments, DOE submitted the draft notices to the White House Office of Information and Regulatory Affairs ("OIRA") in 2011 and 2016. Def.'s Mem. of Points & Authorities in Support of Def.'s Mot. to Dismiss, ECF No. 18-1 at 7-10 [hereinafter "Def.'s Mem."].[2] The draft notices did not make it through OIRA's review process, and DOE withdrew them on March 13, 2014 and January 31, 2017, respectively. *Id*. at 8, 10.[3] The

_____

[2] When citing electronic filings throughout this Opinion, the Court cites to the ECF page number, not the page number of the filed document.

[3] On August 3, 2018, DOE announced a proposed rule and solicited public input to develop energy conservations standards. *See* Energy Conservation Program: Energy Conservation Standards for Manufactured Housing, 83 Fed. Reg. 38073 (Aug. 3, 2018). The comment period ended on September 17, 2018. *See* Energy

Secretary contends that "DOE's rulemaking efforts on energy efficiency for manufactured housing remain active and ongoing." *Id.* at 10. Nonetheless, in the Secretary's own words, "DOE has yet to publish final regulations[.]" *Id.* at 5.

### B. Plaintiff Sierra Club and Its Members

Sierra Club is a national, non-profit environmental organization. Am. Compl., ECF No. 14 ¶ 4; *see also* Ex. 9, ECF No. 22-1 at 46, ¶ 5 [hereinafter "Levenshus Decl."]. It has 822,930 members in all fifty states and Puerto Rico. Ex. 2, ECF No. 22-1 at 7, ¶ 4 [hereinafter "Fashho Decl."]. According to Sierra Club, its "purposes include enhancing public health and the environment and practicing and promoting the responsible use of the Earth's ecosystems and resources." Am. Compl., ECF No. 14 ¶ 4. It states that "Club members are greatly concerned about air quality and energy efficiency[.]" Fashho Decl. ¶ 2.

Sierra Club identifies some of its members as residents, owners, and prospective purchasers of manufactured homes. *E.g.*, Ex. 3, ECF No. 22-1 at 11-12, ¶¶ 5-8 [hereinafter "Fineran

---

Efficiency Standards for Manufactured Housing, eRulemaking Program, https://www.regulations.gov/docket?D=EERE-2009-BT-BC-0021 (last visited Mar. 5, 2019). The Court, *sua sponte*, takes judicial notice of the fact that DOE published this proposed rule in the Federal Register after the parties fully briefed the Secretary's motion to dismiss. *See* Fed. R. Evid. 201 (b) & (c); *see also Oceana, Inc. v. Pritzker*, No. CV 08-1881(PLF), 2014 WL 3907795, at *1 (D.D.C. Aug. 12, 2014) (courts may take judicial notice of the fact that an agency issued a proposed rule).

Decl."]; Ex. 5, ECF No. 22-1 at 26-28, ¶¶ 4-6, 13 [hereinafter "Flournoy Decl."]; Ex. 8, ECF No. 22-1 at 40-42, ¶¶ 9-12 [hereinafter "Land Decl."]. It alleges that these members include individuals "who reside in older manufactured homes needing replacement and those who regularly purchase manufactured homes as part of their business or who plan to purchase a manufactured home[.]" Am. Compl., ECF No. 14 ¶ 30. It avers that "[e]fficency standards save energy and lower energy bills, saving consumers money over the life of the manufactured home," Levenshus Decl. ¶ 8, and "standards for new manufactured homes will assist Sierra Club's members as consumers" to (1) "reduce[] the members' consumption of electricity and natural gas[,]; (2) "ensur[e] that there is a wide range of efficient models readily available[,]" and (3) "push the market to produce higher efficiency, premium models." *Id.* ¶ 10.

### C. Procedural History

On December 18, 2017, Sierra Club filed this action against the Secretary under the EISA and the APA seeking declaratory relief and an order to compel "the Secretary to complete a final rule establishing standards for energy efficiency in manufactured housing in accordance with section 413 of EISA, 42 U.S.C. § 17071, pursuant to an expeditious deadline established by this Court[.]". Compl., ECF No. 1 at 9 ("Relief Requested").

On April 2, 2018, the Secretary moved to dismiss the initial complaint. Def.'s Mot. to Dismiss, ECF No. 12.

On April 23, 2018, Sierra Club filed an amended complaint seeking declaratory and injunctive relief. *See generally* Am. Compl., ECF No. 14. Sierra Club asserts a single claim under Section 17071 (a)(1) of the EISA and Section 706(1) of the APA, alleging that the "Secretary's failure to complete a final rule establish[ing] standards for energy efficiency in manufactured housing . . . constitutes an agency action unlawfully withheld under the [APA]." Am. Compl., ECF No. 14 ¶ 41 (citation and internal quotation marks omitted). Sierra Club seeks a declaration stating the same. *Id.* at 10 ("Relief Requested"). Sierra Club filed a response to the Secretary's motion to dismiss on April 30, 2018. Pl.'s Resp., ECF No. 15. On May 3, 2018, the Court denied as moot the Secretary's first motion to dismiss in light of the amended complaint. May 3, 2018 Minute Order.

On May 29, 2018, the Secretary moved to dismiss the amended complaint on the basis that the Court lacked jurisdiction over Sierra Club's claim because it failed to establish standing. *See* Def.'s Mot. to Dismiss, ECF No. 18; *see also* Def.'s Mem., ECF No. 18-1. Sierra Club filed its opposition on June 29, 2018.[4]

---

[4] On the same day, Sierra Club filed a Motion for Partial Summary Judgment on Standing and Liability and a Request for a Hearing

Pl.'s Opp'n, ECF No. 22. The Secretary filed his reply on July 20, 2018. Def.'s Reply, ECF No. 26. The Secretary's motion is ripe and ready for the Court's adjudication.

## II. Legal Standard

### A. Rule 12(b)(1)

A federal district court may only hear a claim over which it has subject-matter jurisdiction; therefore, a Rule 12(b)(1) motion for dismissal is a threshold challenge to a court's jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). On a motion to dismiss for lack of subject-matter jurisdiction, the plaintiff bears the burden of establishing that the Court has jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, (1992). In evaluating the motion, the Court must accept all of the factual allegations in the complaint as true and give the plaintiff the benefit of all inferences that can be drawn from the facts alleged. *See Thomas v. Principi*, 394 F.3d 970, 972

---

regarding the same under Local Civil Rule 7(f). Pl.'s Mot. for Partial Summ. J., ECF No. 23. On July 5, 2018, the Court temporarily stayed the summary judgment briefing schedule pending the resolution of the Secretary's forthcoming motion to hold in abeyance the summary judgment briefing while the Court considered the Secretary's motion to dismiss. Minute Order of July 5, 2018. After considering the Secretary's motion to hold in abeyance the summary judgment briefing, ECF No. 27, and Sierra Club's response, ECF No. 28, the Court denied without prejudice and held in abeyance Sierra Club's partial motion for summary judgment, allowing it to refile the motion if the Court denied the Secretary's motion to dismiss. August 16, 2018 Minute Order.

(D.C. Cir. 2005). However, the Court is "not required . . . to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations." *Cartwright Int'l Van Lines, Inc. v. Doan*, 525 F. Supp. 2d 187, 193 (D.D.C. 2007) (internal quotation marks and citation omitted).

### B. Standing

Article III of the United States Constitution restricts the power of federal courts to the adjudication of actual "Cases" and "Controversies." U.S. Const. Art. III, § 2; *see also Lujan*, 504 U.S. at 559-60. This requirement has given rise to doctrines "founded in concern about the proper—and properly limited—role of the courts in a democratic society." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "In order to establish the existence of a case or controversy within the meaning of Article III, [a] party must meet certain constitutional minima," including a "requirement that the party. . . has standing to bring the action." *Gettman v. Drug Enf't Admin.*, 290 F.3d 430, 433 (D.C. Cir. 2002). Indeed, "standing is an essential and unchanging part of the case-or-controversy requirement of Article III," *Lujan*, 504 U.S. at 560, and it is an essential inquiry into whether the plaintiff is entitled to have the Court decide the merits of the dispute. *Warth*, 422 U.S at 498.

To establish the "irreducible constitutional minimum" of standing, a plaintiff must demonstrate three prongs: (1) "injury

in fact," which is (a) concrete and particularized and
(b) actual or imminent; (2) that there is a causal connection
between the complained of conduct and the injury alleged that is
fairly traceable to the defendant; and (3) that it is likely,
and not merely speculative, that a favorable decision will serve
to redress the injury alleged. *See Lujan*, 504 U.S. at 560–61,
(internal quotation marks and citations omitted).

### III.   Analysis

The Secretary contends that Sierra Club lacks both
associational and organizational standing. Def.'s Mem., ECF No.
18-1 at 12-19. The Secretary argues that Sierra Club fails to
allege a sufficient injury-in-fact to serve as the basis for
Article III standing under both theories. *Id.* at 12. According
to the Secretary, Sierra Club identifies no economic injury,
health injury, or procedural injury to support standing. *Id.* at
14-21; *see also* Def.'s Reply, ECF No. 26 at 1. The Secretary
contends that "Sierra Club vaguely alleges the ongoing lack of
energy-efficiency standards causes harm to the 'consumer,
[procedural,] environmental, and health interests' of it and
certain of its members." Def.'s Mem., ECF No. 18-1 at 10
(quoting Am. Compl., ECF No. 14 ¶ 38).

Sierra Club maintains that it has standing to sue on behalf
of its members. *See* Pl.'s Opp'n, ECF No. 22 at 18-19. Sierra
Club avers that "DOE's delay [in establishing energy-efficiency

10

standards for manufactured housing] harms the interests of [its] members as consumers of manufactured housing by restricting their opportunities to purchase energy efficient manufactured homes[.]" Pl.'s Opp'n, ECF No. 22 at 19. It further alleges that the lack of these standards "extends and worsens health and welfare harms endured by Sierra Club members who are impacted by the production of the energy wasted in inefficient manufactured homes" and "it deprives Sierra Club and its members of procedural rights that Congress granted them to protect their concrete interests." *Id*.

Because Sierra Club is an association, it may sue on behalf of its members if the Court finds that it meets the Article III standing requirements. *See Sierra Club v. Fed. Energy Regulatory Comm'n*, 827 F.3d 59, 65-66 (D.C. Cir. 2016). The Court will consider whether Sierra Club has satisfied the requirements for associational standing.

### A. Associational Standing

"[A]n association may have standing to assert the claims of its members even where it has suffered no injury from the challenged activity." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 342 (1977) (citations omitted). A plaintiff has associational standing to sue on behalf of its members if: "(1) at least one of its members would have standing to sue in his own right, (2) the interests the association seeks to

protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires that an individual member of the association participate in the lawsuit." *Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002).

The Secretary does not dispute that Sierra Club satisfies the last two requirements, *see generally* Def.'s Mem., ECF No. 18-1; Def.'s Reply, ECF No. 26, and it is clear that Sierra Club satisfies those requirements. Specifically, Sierra Club seeks the establishment of energy-efficiency standards in manufactured housing to protect its individual members' interests and afford them with (1) the option of accessible and affordable new manufactured homes and (2) the benefits of lower utility bills and less exposure to air pollutants and other environmental harms. Pl.'s Opp'n, ECF No. 22 at 20-21. Its members' interests are germane to Sierra Club's purposes, which include "the protection and improvement of air quality and public health and the reduction of adverse environmental impacts from energy production and usage." *Id.* at 20. Furthermore, there is no reason presented in this case to require one of its members to participate in this lawsuit. *See Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 793 F.2d 1322, 1329 n.44 (D.C. Cir. 1986) (noting that "Courts have required individual participation in circumstances where

there are conflicts of interest within the organization or when a specific factual setting is needed to illuminate the issues."). Having found that Sierra Club meets the last two requirements of associational standing, the Court next addresses Sierra Club's members' three alleged injuries in turn, and then addresses the causation and redressability prongs.

Here, "the crux of the standing issue" is "whether the members of [Sierra Club] would have standing to sue in their own right." *Id.* On the basis of declarations submitted by its members, Sierra Club has alleged three forms of concrete harm: (1) economic injury due to the lost opportunity to purchase new, energy-efficient manufactured homes; (2) health injury from exposure to air pollutants and certain harmful emissions in the absence of energy-efficiency standards; and (3) procedural injury as a result of DOE's failure to promulgate final regulations mandated by Congress. Pl.'s Opp'n, ECF No. 22 at 21-32. As the Supreme Court instructed in *Lujan*, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] presum[e] that general allegations embrace those

specific facts that are necessary to support the claim." 504
U.S. at 561 (citation and internal quotation marks omitted).

## 1.    Economic Injury

Sierra Club satisfies the injury requirement in the first
prong of associational standing because at least three of its
members are prospective purchasers and consumers of energy-
efficient manufactured homes who have alleged a sufficient
injury-in-fact. *See, e.g.*, Land Decl. ¶¶ 9-12; Flournoy Decl. ¶¶
4-6; Fineran Decl. ¶¶ 5-8. These members have alleged that they
either cannot find, or it is difficult to find, energy-
efficient manufactured homes, and their ability to search for
such homes will continue to be adversely impacted by DOE's
inaction. *See, e.g.*, Land Decl. ¶¶ 9-12; Flournoy Decl. ¶¶ 4-6;
Fineran Decl. ¶¶ 5-8.

The Secretary contends that Sierra Club has not
demonstrated standing based on an economic injury because it
cannot show "any particular member is unable to find a readily
available efficient manufactured home on the current market[.]"[5]

---

[5] The Secretary relies on *Coalition for Mercury-Free Drugs* for
this proposition. *See* Def.'s Reply, ECF No. 26 at 3-4. There,
the D.C. Circuit held that the plaintiffs alleging physical harm
from vaccines with mercury-based preservative thimerosal lacked
standing to challenge the agency's rule finding that those
vaccines were safe because the "complaint and declarations [did]
not allege that mercury-free vaccines [were] 'not readily
available'" and those vaccines were "unreasonably priced as a
result of [the agency's] decision to allow thimerosal-preserved

14

Def.'s Reply, ECF No. 26 at 1-2; *see also* Def.'s Mem., ECF No. 18-1 at 16. The Secretary argues that Sierra Club's members' "possible" purchases of manufactured homes constitute a "defect" that is fatal to standing. *See* Def.'s Mem., ECF No. 18-1 at 16.

The Secretary's arguments are unavailing. Sierra Club is in a similar position as the organizations found to have standing in *Center for Auto Safety v. National Highway Traffic Safety Administration*, 793 F.2d at 1332. In that case, the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") held that standing was appropriate where the plaintiffs-organizations alleged "an injury to its members, who [were] interested in purchasing the most fuel-efficient vehicles possible" and that the agency's low "standards [would] diminish the types of fuel-efficient vehicles and options available." *Id.*

---

vaccines[.]" *Coal. for Mercury-Free Drugs*, 671 F.3d at 1282-83. Here, Sierra Club addresses the Secretary's concerns by arguing that "the absence of DOE standards leaves many potential purchasers looking for an energy efficient manufactured home with *no options* meeting their needs[.]" Pl.'s Opp'n, ECF No. 22 at 22 (emphasis added). A fair reading of the operative complaint and the declarations would suggest that energy-efficient manufactured homes are not readily available. *See, e.g.*, Am. Compl., ECF No. 14 ¶ 32 ("Such standards ensure that Plaintiff's members will find efficient homes readily available and will not have to pay a premium for them."); Land Decl. ¶¶ 9-10 (explaining the difficulty of finding an energy-efficient manufactured home); Ex. 12, ECF No. 22-1 at 145 ("I would consider buying a new, energy efficient manufactured home if it were easy to get one built the way I think they should be.") [hereinafter "Stevens Decl."]; Flournoy Decl. ¶¶ 3-6.

The D.C. Circuit concluded that the plaintiffs-organizations alleged a "distinct injury to their members." *Id.* at 1334.

The parties do not dispute that the D.C. Circuit "has permitted consumers of a product to challenge agency action that prevented the consumers from purchasing a desired product." *Coal. for Mercury-Free Drugs*, 671 F.3d at 1281; *see also Orangeburg, S.C. v. Fed. Energy Regulatory Comm'n*, 862 F.3d 1071, 1077 (D.C. Cir. 2017) (holding that plaintiff "suffered an injury-in-fact because it [could] not purchase wholesale power on its desired terms."). In *Orangeburg*, the D.C. Circuit made clear that "[t]he lost opportunity to purchase a desired product is a cognizable injury, even though [the plaintiff] *can* purchase, and *has* purchased, wholesale power from another source." 862 F.3d at 1078 (emphasis in original); *see also Competitive Enter. Inst. v. Nat'l Highway Traffic Safety Admin.*, 901 F.2d 107, 112–13 (D.C. Cir. 1990) (finding that organization members would suffer a cognizable "injury in the form of a restricted opportunity to purchase fuel-efficient vehicles" where "[i]n affidavits, . . . members state[d] that they have looked for, but have been unable to find new cars of large size, such as station wagons, in a price range they could afford."). The same is true here.

Sierra Club points out that "the price mark-ups for the non-standard energy efficient features make [energy-efficient

16

manufactured homes] difficult to afford." Pl.'s Opp'n, ECF No. 22 at 21 (citing Fineran Decl. ¶¶ 5-8; Land Decl. ¶¶ 9-12). At least one member of Sierra Club avers that she and her husband purchased a manufactured home in 2018 after finding "a manufactured home dealer with a home specifically retrofitted for energy efficiency." Land Decl. ¶¶ 9-10. She states that "finding it was like finding a needle in a haystack." *Id.* ¶ 10. According to her, she would like to purchase a second manufactured home for their rural property in Texas, but "it is so difficult to find one that is energy-efficient[.]" *Id.* ¶ 12. Other members also plan to purchase new, energy-efficient manufactured homes in the future, but they allege that it is difficult to find them. *See, e.g.*, Ex. 4, ECF No. 22-1, at 18, ¶ 15 ("Sierra Club members . . . will acquire . . . manufactured housing[.]"); Flournoy Decl. ¶ 5; Fineran Decl. ¶ 6.

The Secretary urges the Court to not consider these declarations because they fail to allege "any concrete plans to purchase a manufactured home by any specific date." Def.'s Mem., ECF No. 18-1 at 16. The Secretary's suggestion that the declarations must include specific details about the potential purchases has been foreclosed by D.C. Circuit precedent. *See Sierra Club v. Fed. Energy Regulatory Comm'n*, 827 F.3d at 66-68 (holding that organization member would suffer a cognizable harm based on his statement that he planned to visit an affected area

in the future). The D.C. Circuit has made clear that a plaintiff's statement of "definite dates is not necessary to establish Article III standing where, as here," members of Sierra Club attest in sworn statements that they intend to purchase new, energy-efficient manufactured homes. *Id.* at 68 (citation omitted).

Sierra Club's members have alleged an economic injury that is "concrete" and "particularized" because it "actually exist[s]" and impacts the members "in a personal and individual way." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). The lost opportunity to purchase new, energy-efficient manufactured homes of their choice is concrete and particularized. *See Competitive Enter. Inst.*, 901 F.2d at 113 ("[A] lost opportunity to purchase vehicles of choice is sufficiently personal and concrete to satisfy Article III requirements."). Furthermore, the lack of standards for energy efficiency in manufactured housing leaves these members with increased manufactured home energy use and the financial burden of higher monthly utility expenses. *See* 81 Fed. Reg. at 39759-60.

Sierra Club's members' economic injury is "actual [and] imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citation and internal quotation marks omitted). Sierra Club contends that its members "have searched and are searching for manufactured homes to purchase" and "each home

they view is unlawfully *not* subject to the energy efficient regulations Congress required." Pl.'s Opp'n, ECF No. 22 at 25 (emphasis in original). Such economic harm is real and imminent. *See Orangeburg*, 862 F.3d. at 1079 (concluding that plaintiff "demonstrated an 'imminent' or 'certainly impending' risk of losing out on the opportunity to purchase its desired product" due in part to the federal commission's "long delay and continued inaction"); *cf. Flaherty v. Bryson*, 850 F. Supp. 2d 38, 48 (D.D.C. 2012) (finding that economic harm was actual and imminent where "[p]laintiffs claim[ed] that their ability to fish striped bass for sport or business has been, and will continue to be, harmed by the state of the Atlantic herring fishery because adequate conservation measures to protect the herring upon which striped bass feed have not been adopted."). Accordingly, Sierra Club has demonstrated that its members have suffered an economic injury.

### 2. Health Injury

Sierra Club alleges that standards for energy efficiency in manufactured housing will "benefit [its] members living, working, and engaging in outdoor activities in communities with harmful levels of air pollution and in communities where natural gas and other fuels are extracted, produced, and transported." Am. Compl., ECF No. 14 ¶ 35; *see also* Fisher Decl. ¶ 9 (citing

research that shows manufactured homes are "often sited in areas zoned for commercial and industrial use (rather than residential) and are thus disproportionately impacted by environmental harms."). At least seven members of Sierra Club aver in declarations that their exposure to air pollution and harmful emissions negatively impacts their health. *See, e.g.*, Land Decl. ¶¶ 3-8; Ex. 1, ECF No. 22-1 at 3-5 [hereinafter "Blake Decl."]; Ex. 6, ECF No. 22-1 at 31-32 [hereinafter "Frantz Decl."; Ex. 7, ECF No. 22-1 at 34-36 [hereinafter "Guldi Decl."]; Ex. 10, ECF No. 22-1 at 138-40 [hereinafter "McNall Decl."]; Ex. 11, ECF No. 22-1 at 142-43 [hereinafter "Nipp Decl."]; Ex. 13, ECF No. 22-1 at 148-49 [hereinafter "Stewart Decl."].

For example, Sierra Club member Shirley McNall states that her home is "within one mile of [twenty-five] gas wells[,]" McNall Decl. ¶ 4, and the "emissions from the gas well are harming [her] health." *Id.* ¶ 6. According to her, she "suffered a hydrogen sulfide 'hit'" on her property from the pollution. *Id.* ¶ 7. She goes on to explain that her "legs began to wobble, [her] throat became sore, [her] tongue was beginning to swell, and [she] became extremely confused." *Id.* She maintains that "[t]he delay of publishing these energy efficiency standards and resulting increase in demand for natural gas threaten [her] family's health and [her] own." *Id.* ¶ 13.

The Secretary asks the Court to find that "[t]hese alleged injuries are entirely too vague[.]" Def.'s Mem., ECF No. 18-1 at 18; *see also* Def.'s Reply, ECF No. 26 at 6-7. The Court, however, finds that these members' declarations sufficiently demonstrate a concrete injury to their health from exposure to air pollutants and other harmful emissions. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000) (holding that statements from organization members who lived near contaminated areas with harmful pollutants "adequately documented injury in fact").

Sierra Club's members have also demonstrated a concrete, particularized, and imminent health injury. *See, e.g.*, *Spokeo*, 136 S. Ct. at 1548; *Lujan*, 504 U.S. at 560. As previously stated, seven members allege that their exposure to air pollutants and other harmful emissions is negatively impacting their health due to the lack of standards for energy-efficiency in manufactured housing. This is "the kind of conduct that the suit seeks to enjoin" and there is "a real and immediate threat that the harm-producing conduct will recur" without the energy-efficiency standards. *Coal. For Mercury-Free Drugs*, 671 F.3d at 1280.

### 3.     Procedural Injury

Finally, Sierra Club alleges that the Secretary's failure to promulgate regulations pursuant to the EISA deprives it and

its members of "procedural rights and protections to which they would otherwise be entitled[.]" Am. Compl., ECF No. 14 ¶ 37. Sierra Club argues that Congress granted its members these procedural rights, including the right to challenge the agency's final action, "to protect their concrete interests." Pl.'s Opp'n, ECF No 22 at 29-30. And Sierra Club asserts that the Secretary's failure to act deprives it and its members of the right to have updated "standards within one year after each future edition of the IECC, in compliance with [Section 17071(b)(3).]" *Id.* at 30.

The Secretary contends that "these allegations are not enough to establish standing[,]" because the rulemaking procedures identified by Sierra Club were "not designed to protect any identified concrete interest, nor has Sierra Club shown that the failure to adhere to those procedures creates a substantial risk to such an interest." Def.'s Mem., ECF No. 18-1 at 19-20. The Secretary maintains that Sierra Club does not have a procedural right since "DOE has not violated any of the rulemaking procedures identified by Sierra Club because those procedures have yet to be triggered." *Id.* at 20. The Secretary maintains that Sierra Club has not identified a "ripe" procedural injury. *Id.* at 21.

An association need only make a showing of "concrete harm" to enforce the procedural rights of its members, *see Lujan*, 504

U.S. at 573 n.8, and demonstrate "a causal relationship between the agency [in]action and the alleged injuries." *Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1160 (D.C. Cir. 2005). Thus, "this Court must only determine whether the [Secretary] failed to comply with [his] statutory mandate, and if so, whether there is a *substantial probability* that the [Secretary's] failure to comply caused [Sierra Club's] members to be denied" regulations establishing energy-efficiency standards for manufactured homes. *U.S. Women's Chamber of Commerce v. U.S. Small Bus. Admin.*, No. 1:04-CV-01889, 2005 WL 3244182, at *9 (D.D.C. Nov. 30, 2005) (emphasis in original) (citing *Fla. Audubon Soc'y v. Bentsen*, 94 F. 3d 658, 669 (D.C. Cir. 1996)). Indeed, courts in this Circuit have found that the deprivation of a member's procedural rights can establish associational standing where an agency fails to adhere to its Congressional mandate. *See, e.g.*, *Air All. Houston v. U.S. Chem. & Safety Hazard Investigation Bd.*, No. 17-CV-02608 (APM), 2019 WL 450677, at *8-9 (D.D.C. Feb. 4, 2019) (holding that an organization member had a procedural right based on an agency's failure to promulgate regulations mandated by Congress); *U.S. Women's Chamber of Commerce*, 2005 WL 3244182 at *8-10 (finding that an association could enforce the procedural rights of its

members as a result of an agency's failure to timely complete its congressionally mandated obligations).

An individual may "enforce procedural rights . . . so long as the procedures in question are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing." *Lujan*, 504 U.S. at 573 n. 8. Here, Sierra Club's members have alleged a concrete, particularized, and actual procedural injury. Sierra Club member Shirley McNall alleges a concrete health injury because she lives near gas wells, and she avers that the emissions from those wells are harming her health. *See* McNall Decl. ¶¶ 4, 6. Sierra Club member Karla Land alleges a real and impending economic injury because she asserts that it has been and continues to be difficult to find a new manufactured home with energy-efficient features. *See* Land Decl. ¶¶ 9-12. In attempting to promulgate regulations under the EISA, DOE explained that the proposed energy conservation standards would reduce air pollutants and contribute to making manufactured homes more energy efficient. *See* 81 Fed. Reg. at 39759-60. Accordingly, the Secretary's failure to establish the required regulations under the EISA has resulted in a concrete, particularized, and actual procedural harm to Sierra Club's members.

Sierra Club alleges that its members' concrete interests are frustrated by the Secretary's delay in promulgating

regulations and failure to establish standards as required by
the EISA. Am. Compl., ECF No. 14 ¶ 38. The Court finds that the
Secretary has compromised Sierra Club's members' "concrete and
particularized procedural rights," *U.S. Women's Chamber of
Commerce*, 2005 WL 3244182 at *10, because it is clear that the
Secretary failed to establish regulations for energy-efficiency
standards mandated by Congress, and it is substantially probable
that the Secretary's failure to establish the standards has
caused Sierra Club's members' concrete injury. *See Massachusetts
v. EPA*, 549 U.S. 497, 517–18 (2007) (procedural-rights plaintiff
"has standing if there is some possibility that the requested
relief will prompt the injury-causing party to reconsider the
decision that allegedly harmed the litigant.").

The Court rejects the Secretary's argument that Sierra Club
has not identified a ripe procedural injury. *See* Def.'s Mem.,
ECF No. 18-1 at 21. Sierra Club asserts a single claim under 5
U.S.C. 706(1) for the Secretary's delays and failure to complete
a final rule establishing standards for energy efficiency in
manufactured housing. Am. Compl., ECF No. 14 ¶¶ 38, 41. Section
706(1) of the APA provides that "[t]he reviewing court shall . .
. compel agency action unlawfully withheld or unreasonably
delayed." 5 U.S.C. 706(1). The parties do not dispute that the
Secretary has missed the deadline imposed by Congress to
promulgate the regulations pursuant to 42 U.S.C. § 17071. *See*

Def.'s Mem., ECF No. 18-1 at 5; *see also* Pl.'s Opp'n, ECF No. 22 at 31. Therefore, Sierra Club has alleged a procedural injury to its members that is ripe.[6]

### B. Causation and Redressability

As to the causation and redressability prongs of standing, DOE's own words provide the required causal connection. *See Air All. Houston*, 2019 WL 450677, at *8-9 (finding that language in the agency's proposed rule supplied the required connection that promulgation of mandatory reporting regulations would reduce to some extent the individuals' health risks from their exposure to chemical emissions). In its second attempt to promulgate the final regulations, DOE recognized: "[t]he proposed rule also would produce environmental benefits in the form of *reduced emissions of air pollutants and greenhouse gases* associated with electricity production. DOE estimates that *18.1 million metric tons of carbon dioxide emissions* would be avoided through the

---

[6] Sierra Club contends that "DOE cannot lawfully adopt the negotiated standards it proposed" because the proposed standards were based on the 2015 version of the IECC and a "2018 version of the IECC has not been published[.]" Pl.'s Opp'n, ECF No. 22 at 17 (citing 42 U.S.C. § 17071(a)(2) & (b)(1)), 30 n.8. Sierra Club argues that its procedural injury is ripe because the Secretary has failed to satisfy his obligations under 42 U.S.C. § 17071(b)(1) to issue a proposed rule to adopt standards based on the most recent version of the IECC. *Id.* at 30-32. The Secretary has conceded this argument by not responding to it, *see Campbell v. Nat'l R.R. Passenger Corp.*, 311 F. Supp. 3d 281, 327 n.13 (D.D.C. 2018), and does not dispute that the IECC is updated every three years.

end of 2030 *as a result of the proposed rule*." 81 Fed. Reg. at 39759 (emphasis added). DOE stated that "[i]mproved energy conservation standards are expected to provide nationwide benefits of *reducing utility energy production levels* that would in turn *reduce greenhouse gas emissions and other air pollutants*." *Id.* at 39762 (emphasis added). It also stated: "Establishing robust energy conservation requirements for manufactured homes would result in the dual benefit of *substantially reducing manufactured home energy use* and *easing the financial burden on owners of manufactured homes in meeting their monthly utility expenses*." *Id.* (emphasis added).

Sierra Club satisfies the causation and redressability prongs. *See Sierra Club v. Fed. Energy Regulatory Comm'n*, 827 F. 3d at 65 ("Where, as here, a party alleges deprivation of its procedural rights, courts relax the normal standards of redressability and imminence."); *see also Lujan*, 504 U.S. at 573 n.7 (same). It is apparent that there is a causal relationship between the Secretary's inaction and Sierra Club's members' alleged injuries that would be redressed by establishing standards for energy efficiency in manufactured housing if Sierra Club prevails on the merits. Having found that Sierra Club has associational standing, Sierra Club can pursue this action on behalf of its members. *See U.S. Women's Chamber of Commerce*, 2005 WL 3244182, at *18 (concluding that "the

plaintiff has associational standing to pursue this action for unreasonable delay under APA § 706(1) on behalf of its membership.").[7]

## IV. Conclusion

For the reasons set forth above, the Court **DENIES** the Secretary's motion to dismiss. A separate Order accompanies this Memorandum Opinion.

**SO ORDERED**

**Signed:      Emmet G. Sullivan**
**             United States District Judge**
**             March 12, 2019**

---

[7] Because the Court finds that Sierra Club has associational standing, it need not consider whether Sierra Club also has organizational standing. *Metro. Wash. Chapter v. District of Columbia*, 57 F. Supp. 3d 1, 20 n.8 (D.D.C. 2014) (Sullivan, J.) (declining to consider organizational standing because organization met the requirements for associational standing).